UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, | Civ. No. 09-4871 (KM)(MCA) |
| *Plaintiff/Counter-Defendant,* | OPINION |
| v. | |
| TRAVELERS PROPERTY CASUALTY COMPANY, *counter-claimant, third party plaintiff, cross-claimant, cross-defendant;* ILLINOIS NATIONAL INSURANCE COMPANY, *counter-claimant, cross-defendant;* LEXINGTON INSURANCE COMPANY, *counter-claimant, cross-defendant;* OLD REPUBLIC INSURANCE COMPANY, *cross-defendant,* | |
| *Defendants,* | |
| v. | |
| PENSKE TRUCK LEASING CO., L.P. GARDNER, MASSON, BISHOP & COMPANY, *counter-claimant, cross-claimant, cross-defendant;* GARDNER M. BISHOP, INC., *counter-claimant, cross-claimant, cross-defendant;* MARK ALBANESE, *counter-claimant, cross-defendant;* JOSEPH PUCCIO, *counter-claimant, cross-defendant;* JOHN KANARD, *cross-defendant,* | |
| *Third Party Defendants.* | |

1

**MCNULTY, U.S.D.J.:**

This action arose from an accident in which John Kanard, a tractor-trailer driver, was severely injured as a result of the acts of Gardner, Masson, Bishop & Company ("Gardner Bishop"), a general contracting company. Kanard sued Gardner Bishop and ultimately obtained a $5 million dollar settlement. The settlement was paid for by Gardner Bishop's primary liability insurer, Travelers Property Casualty Company ("Travelers"), and excess carrier, Illinois National Insurance Company ("Illinois National"). Thereafter, Carolina Casualty Insurance Corporation ("CCIC")—another potentially liable insurer—brought this action seeking a declaratory judgment that it did not owe coverage to Gardner Bishop in relation to the accident. Travelers, Illinois National, and CCIC each moved for summary judgment on the coverage question.[1] In my opinion dated October 22, 2014 (the "Opinion") (Dkt. No. 106), I held that CCIC did owe coverage and was required to reimburse Illinois National for a portion of the $5 million settlement. My Opinion and Order asked the parties to submit letters addressing any other issue that remained to be decided in order to put the Court in a position to enter final judgment.

Now before the Court are the letters submitted by Travelers (Dkt. Nos. 110, 113) and Illinois National (Dkt. No. 109). Also before the Court is a motion for reconsideration filed by CCIC (Dkt. No. 112),[2] as well as what amounts to a letter brief opposing the submissions of Travelers and Illinois National (Dkt. No. 111). In their letters, Travelers and Illinois National request an award of attorney fees and costs. Illinois National additionally requests prejudgment interest on the amount owed by CCIC. CCIC, in its letter, proffers several reasons why the awards sought by Traveler and Illinois National should be

---

[1] Motions for summary judgment were also filed by Penske Truck Leasing Co., L.P. ("Penske") and Old Republic Insurance Company ("Old Republic"). Those parties are not directly involved in the matters decided in this opinion.

[2] Penske and Old Republic submitted a letter to the Court stating that they take no position with respect to CCIC's motion for reconsideration because it does not challenge the Court's decision regarding their liability on the coverage question. (*See* Dkt. No. 117)

denied in whole or in part. For the reasons set forth below, the relief requested by Travelers and Illinois National is granted and CCIC's motion for reconsideration is denied.

## I.     MOTION FOR RECONSIDERATION

I first address CCIC's motion for reconsideration.[3] CCIC does not challenge the manner in which the Court apportioned liability for the $5 million settlement among the various insurers. Instead, CCIC contends that the Opinion failed to consider certain language in the Travelers policy that is relevant to the allocation of defense costs.

### A. The Summary Judgment Opinion

The details of the Opinion are well known to the parties. I briefly summarize a few aspects that are relevant to CCIC's motion for reconsideration.

In the Opinion, I found that CCIC owed coverage to Gardner Bishop as a "user" of the tractor-trailer. I then found that CCIC was obligated to pay $1,000,000—the limit of its policy—to reimburse Illinois National for the costs of the settlement award. All told, I apportioned liability for the settlement award as follows:

---

[3]     CCIC's motion is titled "Brief of Plaintiff in Support of its Motion Pursuant to Fed. R. Civ. P. 59(e) and 60(b)." It also cites Local Rule 7.1(i), which governs motions for reconsideration. In this District, "[t]he fundamental distinction between Fed. R. Civ. P. 59(e) and L. Civ. R. 7.1(i) is that 'the provisions of rule 59 are designed to address orders rendering a final judgment,' whereas L. Civ. R. 7.1(i) is a mechanism for reconsideration of interlocutory orders." A. Lite, N.J. Fed. Prac. L. R. 7.1, comment 6 (2015 ed.) (quoting *Navarrete v. United States*, 2013 WL 796274, at *2 (D.N.J. Mar. 4, 2013)). For the reasons expressed herein, the relief sought by this motion would not really require any alteration to the Court's earlier Opinion and Order. But as a request to amend or change an interlocutory order, it is best viewed as a motion for reconsideration under Rule 7.1(i), and I have titled it accordingly.

| Primary Coverage | | Excess Coverage | |
|---|---|---|---|
| Travelers | $1,000,000 | Illinois National | $1,492,500 |
| CCIC | $1,000,000 | Lexington | $1,492,500 |
| Old Republic | $15,000 | | |
| Total Primary | $2,015,000 | Total Excess | $2,985,000 |

To decide each insurer's percentage of liability, I initially set aside the excess coverage and determined the amount owed by each primary insurer. Because there are three insurers at the primary coverage level, I had to consider each policy's "other insurance" clause to determine how the coverage should be allocated among them. Thus I reviewed the Travelers policy's Other Insurance clause, which provided that Travelers' coverage would be "excess over[] [a]ny of the other insurance...[i]f the loss arises out of the maintenance or use of...'autos[.]'" (Dkt. No. 89-19, at 31) The loss in this case arose from the "use" of an "auto" as defined. I found, however, that the Travelers policy was a primary-level policy and not a "true" excess policy, because it was not conditioned on the existence of a primary policy. (*See* Dkt. No. 106, at 30) In effect, it was "excess" only in the specialized sense of setting priorities among the policies *at the primary level.* (*See id.* at 27-32)

Because the amount of the settlement far exceeded the limits of the three primary policies, it was unnecessary to determine the priority of payment among the primary carriers. All of their limits would be exhausted regardless. That holding applied only to payment of the settlement, however. As to the allocation of defense costs, an issue that was explicitly reserved, I requested additional submissions from the parties.

## B. CCIC's Motion for Reconsideration

### 1. The alleged error

CCIC asserts that the Court's earlier Opinion ignored definitional language in the Travelers policy's Commercial General Liability Coverage Form. CCIC acknowledges that the Opinion's allocation of settlement costs is unaffected. But by not considering this definitional language, CCIC argues, the Court's prior Opinion impliedly, and mistakenly, would render CCIC liable for Travelers' defense costs.

As noted in my prior Opinion, the Other Insurance clause of the Travelers policy deems it to be excess[4] where liability arises from the "use" of an "auto," which includes the "loading and unloading" of cargo from a truck (*See* Dkt. No. 89-19, at 24). CCIC contends, however, that the same policy states elsewhere that "'loading and unloading' does not include the movement of property by means of a mechanical device" (*Id.* at 33-34). The loading and unloading that gave rise to the accident at the heart of this case involved a mechanical device. Therefore, CCIC argues, Gardner Bishop never "use[d]" the tractor-trailer, and the Travelers policy is not "excess" within the meaning of its Other Insurance clause. That designation matters, says CCIC, because as a primary insurer Travelers would be obligated to contribute to the costs of defense *pro rata*. By contrast, if the policy is deemed excess, then Travelers would have "no duty to defend" its insured (although it did so), and CCIC would be liable to reimburse Travelers for its defense costs. (Dkt. No. 89-19, at 31)

CCIC requests that the Court amend its earlier Opinion to reflect this additional definitional language in the Travelers policy. (*See* Dkt. No. 112-1, at 6) Alternatively, CCIC asks the Court to clarify that the Opinion applies only to the allocation of settlement costs, not defense costs. (*See id.* at 4)

---

[4]   Excess, remember, in the specialized sense of prioritization among insurers at the primary level.

5

## 2. Discussion

CCIC's motion will be denied for two reasons: (a) Considered as a motion for reconsideration, it is faulty because CCIC never fairly brought its current arguments to the Court's attention. More fundamentally, however, the relief requested would not affect the prior Opinion and Order. CCIC's arguments do not alter this Court's allocation of coverage, the subject of the earlier Opinion. They relate only to the allocation of defense costs, an issue explicitly reserved by the Court and made subject to further proceedings. (b) At any rate, CCIC is wrong on the merits. The policy provision on which it relies was removed from the Travelers policy by endorsement. And even without the endorsement, the provision would be overridden by N.J.S.A. 39:6B-1, New Jersey's omnibus motor vehicle insurance law.

### a. Reconsideration

Viewed as a motion for reconsideration, CCIC's application is plainly inadequate. *See generally* D.N.J. Loc. Civ. R. 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Carmichael v. Everson*, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004). Local Rule 7.1(i) requires such a motion to specifically identify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *Id.; see also Egloff v. New Jersey Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Evidence or arguments that were available at the time of the original decision will not support a motion for reconsideration. *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623, 636 (D.N.J.

1997); *see also North River Ins. Co.*, 52 F.3d at 1218; *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 2010 WL 5418972, at *4 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)). Mere disagreement with a holding is properly expressed via an appeal, not a motion for reconsideration. *See Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996).

All provisions of the Travelers policy were available to all parties at the time of the summary judgment motions. CCIC has not identified any intervening change in the law or pointed to any evidence that was not previously available to the Court. Rather, CCIC attempts to use this motion to raise new arguments.

CCIC's summary judgment papers did not fairly present its current contention that the definition of "loading and unloading" requires that the Travelers policy be deemed primary.[5] Rather, CCIC repeatedly took the position that the Travelers policy was *excess* under the terms of its Other Insurance clause. In support of its motion for summary judgment, CCIC stated:

> Where the Other Insurance provisions of applicable policies all state that they each should operate in excess of any other valid insurance, they are deemed to be mutually repugnant and must be deemed to apply pro rata with one another.
>
> The six policies at issue each contain Other Insurance clauses *which state that any applicable insurance should apply excess of it.* In fact, most of the said clauses are identical. Indeed, this is also the case with respect to the CCIC and Travelers' policies.
>
> Consequently, any coverage which Travelers asserts should be owed is owed pro rata with Travelers' own coverage.

(Dkt. No. 89-1, at 20) (emphasis added) Likewise, in its opposition to Travelers' motion for summary judgment, CCIC again stated:

---

[5] CCIC maintains that it cited the definitional language at oral argument, but that "time did not permit complete exposition and argument of the specific language, perhaps affecting the Court's consideration of the issue." (Dkt. No. 112-1, at 7-8).

7

> [S]ince the Other Insurance provisions of...the Travelers and the Illinois National policies *all state that they each should operate in excess of any other valid insurance,* they are deemed to be mutually repugnant and must be deemed to apply pro rata with one another.

(Dkt. No. 95, at 14) (emphasis added) CCIC later, and without explanation, reversed this position in a reply brief and stated that the Travelers policy was primary, but it never connected that turnabout to the definitional language that it cites now.[6] CCIC cannot fault the Court for failing to consider an argument it seems to have purposely bypassed, but anyway never made.[7]

More fundamentally, CCIC's presentation of its motion as one to amend or alter the Court's prior Order is puzzling. CCIC seems to fear that the Court's prior interpretation of the Travelers policy will affect the allocation of defense costs. The defense costs issue, however, has not yet been decided. Not having been "considered," it cannot be "reconsidered."

The prior Opinion expressly states that the Court is reserving the issue of defense costs. (*See* Dkt. No. 106, at 33 ("The parties are directed to submit letters within 20 days outlining any issues that must be decided in order for the Court to enter a judgment that is final as to all claims and all parties. These may include fees and costs, as well as any remaining third-party claims, counterclaims, and cross-claims."))[8] As to allocation of the settlement, priorities

---

[6]  In a reply brief submitted with leave of the Court, CCIC flatly asserted that "[t]here is no basis on which and no argument to apply [the Excess Insurance subsection of the Travelers policy's Other Insurance clause], and therefore the Travelers policy operates on a primary basis." (Dkt. No. 98, at 10) CCIC did not explain its position or even acknowledge that it had earlier argued that the Travelers policy should be deemed excess.

[7]  Indeed, in support of its Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment, CCIC attached as "Exhibit I" the "[p]ertinent specific [excerpts] pertaining to the operation of 'Other Insurance'" in the Travelers policy. (Dkt. No. 89-2, ¶16) These excerpts, found at Dkt. No. 89-13, do not include the definition of "loading and unloading" on which CCIC relies.

[8]  That language is sufficiently clear. CCIC's alternative demand for "clarification" is therefore denied.

among the primary-layer insurers did not matter. As the Opinion notes, the $5 million settlement exceeds the primary insurers' combined policy limits. It does not matter who is first, second, or third; each will pay up to its policy limit. CCIC acknowledges that it is not quarreling with that aspect of the Opinion. (*See* Dkt. No. 112-1, at 7 n.2)

For purposes of allocation of defense costs, however, assume *arguendo* that prioritization does matter. Even so, there is nothing wrong with the reasoning of the Opinion, and it need not be amended. If prioritization matters for purposes of allocating defense costs, so be it; the Court will consider such arguments if and when they become consequential. *But see* Part II, *infra*.

### b. The merits

Finally, even taken at face value, CCIC's reconsideration motion must be denied on the merits.

First, the definitional language upon which CCIC relies was removed from the Travelers policy by endorsement. That endorsement, which modifies the terms of the Commercial General Liability Coverage Form, states: "The definition of 'loading or unloading' in the Definitions Section does not apply." (Dkt. No. 89-19, at 67) Thus the language on which CCIC relies—the language that the Court is alleged to have mistakenly ignored—is inoperative.

Second, even setting aside the endorsement, for the reasons expressed in the Opinion (*see* Dkt. No. 106, at 16-22), the New Jersey Omnibus Statute, N.J.S.A. 39:6B-1, would override the limitations contained in the policy's definition of loading and unloading.

For the foregoing reasons, CCIC's motion for reconsideration is denied.

## II. REMAINING ISSUES

Travelers, Illinois National, and CCIC have submitted letters to the Court discussing the issues that must be decided in order to place the Court in a position to enter final judgment. As noted above, Travelers and Illinois National

request an award of attorney fees and costs, and Illinois National separately requests an award of prejudgment interest. CCIC argues, at some length, that this relief must be denied.

### A. Defense Costs

Travelers and Illinois National argue that CCIC is liable for their defense costs. They contend that, when CCIC improperly denied coverage, they incurred the costs of defending the claim against Gardner Bishop as well as this declaratory judgment action. CCIC, they say, is obligated under New Jersey law to pay the attorney fees and costs that they incurred. CCIC counters that Travelers' and Illinois National's conduct over the course of this litigation should bar them from recovering defense costs. Alternatively, CCIC argues that the amount sought by Travelers must be reduced.

Under New Jersey Court Rule ("NJCR") 4:42-9(a)(6), a party may recover attorney fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." The rule seeks "to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured is, in fact, entitled to such protection." *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F. Supp. 2d 515, 532 (2011) (quoting *Guarantee Ins. Co. v. Saltman*, 217 N.J. Super. 604, 610 (App. Div. 1987)). In short, it attaches a potential cost to an insurer's wrongful refusal to indemnify.

The Rule as promulgated awarded defense costs only where an insurer refused to indemnify or defend its insured's third-party liability to another. However, "New Jersey courts have also awarded attorney fees incurred by an insured in a declaratory judgment action to determine the existence of coverage of liability to third parties." *Guarantee Ins. Co.*, 217 N.J. Super. at 612. All successful claimants—not just policy holders—may recover attorney fees. Eligible claimants "include excess or secondary carrier[s] which successfully prosecute a coverage action against the primary carrier when the latter has wrongfully refused to defend its insured." *Tooker v. Hartford Accident & Indem.*,

10

Co., 136 N.J. Super. 572 (App. Div. 1975)). Ultimately, however, the award of defense costs is "not mandatory in every action on an indemnity or liability policy" but rather is committed to the trial judge's "broad discretion." *Enright v. Lubow*, 215 N.J. Super. 306, 313 (App. Div. 1987).

I agree with Travelers and Illinois National that CCIC should pay their defense costs under NJCR 4:42-9(a)(6).[9] CCIC brought this action seeking a declaratory judgment that it was not obligated to provide coverage to Gardner Bishop in connection with the injuries sustained by Kanard, a third party. This action is undoubtedly "an action upon a liability or indemnity policy of insurance." Travelers and Illinois National—Gardner Bishop's primary and excess insurers—have prevailed on the issue whether CCIC owed coverage to Gardner Bishop. Travelers and Illinois National thus qualify as "successful claimant[s]" within the meaning of NJCR 4:42-9(a)(6). Accordingly, they are entitled to recover from CCIC the fees and costs incurred to defend Gardner Bishop in the initial action brought by Kanard, as well as the fees and costs incurred to defeat this coverage action. *See, e.g., Harleysville Ins. Co. of New Jersey v. Dray-Con Transp., Inc.*, 2011 WL 798688, at *5 (N.J. Super. Ct. App. Div. Mar. 9, 2011); *Moper Transp. Inc. v. Norbet Trucking Corp.*, 399 N.J. Super. 146, 157-58 (App. Div. 2008), *certif. denied*, 196 N.J. 463 (2008); *Tooker*, 136 N.J. Super, at 576-77.

CCIC makes the opaque assertion that Travelers and Illinois National have failed to prove that they are entitled to recovery "under the applicable legal standard." That aside, CCIC does not deny that NJCR 4:42-9(a)(6) authorizes the recoupment of defense costs here. Instead, CCIC argues that the Court should deny recovery because Travelers has "unclean hands" or has "waived its right of reimbursement" in the course of negotiations.

Under the doctrine of unclean hands, a court will withhold equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct,

---

[9] Travelers also argues that it is entitled to defense costs under the terms of its policy. Since I have found that Travelers is entitled to an award of defense costs under NJCR 4:42-9(a)(6), I do not address that argument.

11

or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities." *Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 147 n. 12 (3d Cir.1999). The nexus between the offending conduct and the relief requested "must be close." *Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 174 (3d Cir. 2001).

CCIC alleges that Travelers and Illinois National contrived a "ruse" to deliberately inflate their attorney fees and costs. (Dkt. No. 111, at 2) After CCIC initiated this declaratory judgment action, for example, Travelers and Illinois National impleaded and initially sought contribution from Old Republic, but later abandoned that claim. That about-face, says CCIC, was just one of several ploys to "prolong settlement discussions" and "delay [the] ultimate resolution of the underlying case." (Dkt. No. 111, at 2)

I am skeptical of this "deliberate delay" or "refusal to settle" theory, which has little factual support. Travelers and Illinois National had little incentive to pour money into this declaratory judgment action unnecessarily. The best case scenario is that they (or their attorneys) would get the excess money back. And that scenario depended upon their ultimately prevailing, an uncertain proposition. Even assuming that CCIC's theory makes economic sense, there is no evidence of the nefarious intent that it attributes to Travelers and Illinois National.

I find these allegations insufficient to bar recovery under the doctrine of unclean hands. There is no conduct so inequitable as to bar an otherwise appropriate recovery. Travelers and Illinois National had the right to assert their case against a potentially liable insurer like Old Republic. That they subsequently chose to release their claims (which turned out to be worth $15,000) is not blameworthy. Nor does it disentitle them to fees and costs under NJCR 4:42-9(a)(6). Even if dilatory, these acts are not "directly related"

in the sense that they are inconsistent with the basic entitlement to costs. *Paramount Aviation Corp.*, 178 F.3d at 147 n.12.[10]

CCIC argues in the alternative that Travelers waived its right to recover defense costs. On October 5, 2006, shortly after Kanard was injured, Travelers notified CCIC of the claim against Gardner Bishop and demanded that CCIC defend and indemnify. In a letter dated December 10, 2007, CCIC declined. On December 9, 2008—nearly four months after Kanard filed suit against Gardner Bishop—Gardner Bishop's counsel wrote and renewed Travelers' prior demand. That December 9 letter stated: "If you [*i.e.*, CCIC] decline to accept this tender unreservedly, I will continue to represent Gardner Bishop in this matter and will seek reimbursement of all attorneys' fees and other costs associated with this matter." (Dkt. No. 90-4, Ex. M) CCIC responded to that second tender by letter dated March 13, 2009, but rejected its terms; CCIC stated that it would defend Gardner Bishop, but only under "reservation" and on a "pro rata" basis. Gardner Bishop, believing with some foundation that CCIC had rejected its offer, did not respond. On September 23, 2009, CCIC instituted this declaratory judgment action. In its complaint, CCIC backed away from its offer to share defense costs pro rata and instead asserted that "Travelers is obligated to defend and indemnify Gardner Bishop with respect to any claims or suits" arising from the Kanard accident. (Dkt. No. 1, ¶48). CCIC now contends that

---

10   In an analogous context, New Jersey will permit recovery of attorney's fees where an insurer has acted in bad faith, for example by breaching its fiduciary duty to settle claims. *Badiali v. New Jersey Mfrs. Ins. Group*,--N.J.--, -- A.3d --, 2015 WL 668206 at *5 (N.J. Supr. Ct. Feb. 18, 2015) (citing *Lieberman v. Employers Ins. of Wausau*, 84 N.J. 325, 336, 419 A.2d 417 (1980)). But "mere failure to settle a debatable claim does not constitute bad faith.... Rather, to establish a first-party bad faith claim for denial of benefits in New Jersey, a plaintiff must show 'that no debatable reasons existed for denial of the benefits.'" *Id.* (citing *Pickett v. Lloyd's*, 131 N.J. 457, 473, 481, 621 A.2d 445 (1993)). Here, Travelers' position was not just "debatable," but (as it turned out) correct. Its failure to accept CCIC's March 2009 counteroffer, discussed below, was not inequitable.

13

Travelers, because it did not explicitly respond to the March 13, 2009 counteroffer, waived its right to recover its defense costs.[11]

CCIC's waiver argument is not well taken. In 2007, CCIC refused outright to indemnify or defend Gardner Bishop. It gave no sign of willingness to participate in Gardner Bishop's defense, even after Kanard filed his lawsuit. Not until March 2009, when it responded to Gardner Bishop's renewed demand, did CCIC offer anything at all. CCIC admits that this response, offering pro rata contribution, amounted to a "refusal of [Travelers'] contractual indemnification tender." (Dkt. No. 111, 3) CCIC did not moot this dispute; it counteroffered less than it owed. As I concluded in my Opinion, the Travelers policy is excess among the primary-level policies according to its Other Insurance clause. That clause further states that when the Travelers policy is excess, Travelers "will have no duty...to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'." (Dkt. No. 89-19) The Court has found that CCIC is such an "other insurer" and that it had a duty to defend Gardner Bishop. Therefore, Travelers was under no duty to defend Gardner Bishop in Kanard's suit. From Travelers' perspective, CCIC's offer to pay for only part of Gardner Bishop's defense was plainly insufficient. And shortly thereafter, CCIC filed this declaratory judgment action, in which it backtracked and disclaimed any obligation to indemnify or defend Gardner Bishop.

That course of conduct did not constitute a "waiver" of Travelers' rights. Travelers was not obligated to accept CCIC's March 2009 counteroffer; indeed, as I have found, Travelers' position, not CCIC's, was correct. NJCR 4:42-9(a)(6) was enacted "precisely to discourage this sort of behavior" by compelling

---

[11] Any notion that Travelers, by its silence, accepted CCIC's counteroffer of pro rata defense is contrary to New Jersey law. "New Jersey courts require 'an unqualified acceptance' to conclude the manifestation of mutual assent; and while acceptance may be implied through conduct, silence does not ordinarily manifest assent, particularly in cases where the parties' relationship and circumstances justify the offeror's expecting a reply." *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 323 (3d Cir. 2006) (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427 (1992)).

14

insurance companies to honor their obligations without the necessity of judicial intervention. *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F.Supp.2d at 515, 532 (D.N.J. 2011). CCIC's counteroffer may have been in good faith, but under NJCR 4:42-9(a)(6), a successful claimant "need not show that an insurer acted in 'bad faith' to recover." *Id.* Travelers did not waive its right to recovery under NJCR 4:42-9(a)(6).

CCIC asserts, as a last resort, that if it is found liable for Travelers' defense costs, "the date from which expenditure…should be calculated is June 2012." (Dkt. No. 111, at 2) The argument is confusingly expressed. June 2012, says CCIC, is "the date on which Travelers rejected [its] good faith tender of pro rata sharing, the date of mediation in the underlying matter." (*Id.*) The sense seems to be that CCIC's pro rata counteroffer remained alive until rejected in June 2012.[12] CCIC made its pro rata counteroffer in March 2009. That offer, as stated above, did not discharge CCIC's obligation. Moreover, it must be regarded as withdrawn as of September 2009, when CCIC sued for a declaratory judgment that it owed nothing. Accordingly, CCIC's request to limit Travelers' defense costs to those incurred after June 2012 is rejected.

Travelers and Illinois National are entitled to reimbursement of their defense costs from CCIC. Within 14 days, they shall submit certifications of services sufficient to support their claims.

### B. Prejudgment Interest

In the Opinion, the Court ruled that CCIC must pay $1 million dollars to Illinois National, representing the portion of the $5 million settlement for which CCIC is liable. Illinois National now requests an award of interest on that amount. CCIC opposes such an award on the same basis it challenged the

---

[12] As Travelers points out, the mediation in Kanard's action was conducted September 2011, and Kanard settled the underlying action for $5 million in January, not June, 2012. In the end, however, the confusion over these dates does not matter for the reasons expressed in the text, above.

award of defense costs—inequitable prolongation of the litigation. Those grounds are rejected for the reasons stated above.

Under New Jersey state law, the purpose of prejudgment interest is to "compensate the plaintiff for the loss of income that would have been earned on the judgment had it been paid earlier." *Thabault v. Chait*, 541 F.3d 512, 533 (3d Cir. 2008); *Ruff v. Weintraub,* 105 N.J. 233, 519 A.2d 1384, 1390 (1987). Illinois National argues that because it paid the settlement, including the portion owed by CCIC, on April 5, 2012, it should receive prejudgment interest from that day forward. I agree. By refusing to contribute the full amount owed under its policy, CCIC caused Illinois National to foot the bill in the interim. Illinois National is entitled to interest representing the time value of that money.

### C. Correction of the Opinion and Order Regarding Lexington Insurance Company

In the Opinion and Order, the Court found that Lexington Insurance Company ("Lexington") owed Illinois National $1,492,500. This amount was calculated by determining the amount of the settlement owed by the three eligible primary insurers, $2.015 million, and then splitting the balance of the settlement between the two eligible excess insurers—Illinois National and Lexington. Illinois National, however, released its claim for contribution against Lexington before the Court filed the Opinion and Order. (*See* Dkt. No. 109, at 8, 10) Accordingly, Illinois National requests that the Court amend the Opinion and Order to reflect its withdrawal of claims.

I will enter an order amending my prior order to reflect Illinois National's withdrawal of claims against Lexington. The overall allocation of the settlement, however, needed to be calculated, and it remains unchanged. This amendment has no other effect than to adjust the status of Illinois National vis-à-vis Lexington. By virtue of dropping its claims, Illinois National cannot collect what Lexington would otherwise owe it. CCIC's liability remains the same.

CCIC opposes this correction on the grounds that "the percentage of allocation decided by the Court should not be revisited except upon the filing of an appropriate Motion or Appeal." (Dkt. No. 111, at 4) I reject that argument. I directed the parties to submit letter briefs addressing any issues not decided in the Opinion that "must be decided in for the Court to enter a judgment that it final as to all claims and all parties." Illinois National's request is within the scope of my instruction.

An appropriate amendment to the Order will be entered.

### III. CONCLUSION

For the reasons stated above, CCIC's motion for reconsideration is **DENIED**. Travelers' and Illinois National's request for attorney fees and costs is **GRANTED**. Illinois National's request for prejudgment interest and to amend the Opinion is **GRANTED**.

Within 14 days, Travelers and Illinois National will submit certifications documenting and calculating their defense costs. Illinois National will submit a calculation of prejudgment interest.

An appropriate order will be filed.

*[signature]*

**HON. KEVIN MCNULTY**
**United States District Judge**

Dated: February 25, 2015